UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANNA A. DAVIS, et al.,

        Plaintiffs,

v.

SEVA BEAUTY, LLC, et al.,

        Defendants.

C17-547 TSZ

ORDER

THIS MATTER comes before the Court on defendants' motion to stay this action pending arbitration, docket no. 17. By Minute Order entered July 13, 2017, docket no. 38, the Court granted defendants' motion in part and deferred it in part. This Order explains the Court's reasons for granting the motion to stay with respect to plaintiffs' claims against defendant SEVA Beauty, LLC ("SEVA") and addresses the deferred portion of the motion.[1]

## Background

---

[1] In its prior Minute Order, the Court directed the parties to file supplemental briefs addressing whether plaintiffs' claims against the individual defendants are subject to arbitration pursuant to contracts to which they are not parties and, if not, whether such claims should nevertheless be stayed pending the outcome of arbitration proceedings involving SEVA. Minute Order at ¶ 1(b) (docket no. 38). The parties filed a joint response indicating their agreement that, if plaintiffs' claims against SEVA must be arbitrated, then their claims against the individual defendants should also be arbitrated, and this case should be stayed. Joint Response (docket no. 39).

ORDER - 1

Plaintiffs are disgruntled franchisees who, between 2013 and 2016, entered into contracts with SEVA, a franchisor of salons housed in Walmart stores across the country. Plaintiffs allege various violations of certain state laws governing franchises and seek rescission of their agreements. *See* Am. Compl. at §§ III & VI (docket no. 2) (citing the Washington Franchise Investment Protection Act, the Michigan Franchise Investment Law, the Minnesota Franchise Act, and the Illinois Franchise Disclosure Act of 1987). They also seek actual and treble or punitive damages, as well as costs and attorney's fees. *See id.* at § VI. Plaintiffs assert their claims against SEVA, as well as its sole members Vasilios Maniatis and Sonal Maniatis, its Chief of Staff Kari Comrov, its Senior Director of Operations or Director of Spa Operations Bree Viscia, and its former Director of Operations Jonathan Kittner. *See id.* at ¶¶ 16-19, 53, 62, 71, & 80. Defendants contend that all of plaintiffs' claims must be arbitrated pursuant to the terms of the respective agreements with SEVA.

**Discussion**

In enacting the Federal Arbitration Act ("FAA"), Congress endorsed a federal policy favoring arbitration agreements. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Section 2 of the FAA treats an arbitration provision in a written contract as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As with any other contract, the parties' intentions control, but those intentions are liberally construed in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Any doubts regarding arbitrability, whether stemming

from interpretation of the contract language or the assertion of waiver, delay, or similar defense, are resolved in favor of arbitration. *Id.* (quoting *Moses H. Cone*, 460 U.S. at 24-25). In resisting defendants' motion to stay this action pending arbitration, plaintiffs contend that the Court, not the arbitrator, must determine the arbitrability of plaintiffs' claims, and that plaintiffs' prayer for rescission as a remedy for violation of certain state franchise laws constitutes an equitable claim falling outside the scope of the arbitration provisions at issue.

Whether the parties agreed to arbitrate arbitrability is a question for the Court unless the parties "clearly and unmistakably" provided otherwise. *AT&T Techns., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Incorporation of the American Arbitration Association ("AAA") rules can constitute "clear and unmistakable" evidence that the parties agreed to arbitrate arbitrability. *Brennan*, 796 F.3d at 1130. Express contractual language or "a course of conduct demonstrating assent" is also "clear and unmistakable" evidence of an agreement to arbitrate arbitrability. *Mohamed v. Uber Techns., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (quoting *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)). In *Mohamed*, the Ninth Circuit held that, with one exception,[2] the question of arbitrability had been delegated by the parties to the arbitrator. 848 F.3d at 1206, 1209. The parties' agreement required arbitration of all disputes that "otherwise would be resolved in a court

---

[2] One of the two agreements at issue contained a clause that required "a court of competent jurisdiction" to decide whether waivers of the right to bring class, collective, and private attorney general actions were "invalid, unenforceable, unconscionable, void, or voidable." 848 F.3d at 1208.

ORDER - 3

of law," including those "arising out of or relating to interpretation or application of" the arbitration provision. *Id.* at 1208-09.

Each plaintiff in this action entered into one of three forms of franchise agreement with SEVA. Plaintiffs Punardeep Sandhu and Amarjeet Randhawa, who are the only members of plaintiff PR Spas & Salons, LLC ("PR Spas"), signed a contract (Form 1) containing a provision that reads in relevant part:

> Except as qualified below, any dispute between you and us . . . arising under, out of, in connection with or in relation to this Agreement . . . must be submitted to binding arbitration under the authority of the Federal Arbitration Act and must be determined by arbitration administered by the American Arbitration Association pursuant to its then-current commercial arbitration rules and procedures. . . . Any issue as to whether a matter is subject to arbitration will be determined by the arbitrator. . . .

Defs.' Ex. A (docket no. 17-1 at 3-4).

Plaintiffs (i) Anna A. Davis and Christiana Grace, LLC, (ii) Jason and Karen Bleick and Beauty in Spokane, LLC, (iii) Gregory and Robin Kelly and Avatar2026 Holdings, Inc., (iv) Thomas Cuthbert, Laura Charboneau, and Midwest Beauty, Inc., and (v) Mivas, LLC (owned by Travis Hawkes and Michael D. Payne) are subject to an arbitration clause (Form 2) that provides as follows:

> Except as qualified below and in Section 10.03, any dispute between you and us . . . arising under, out of, in connection with or in relation to (a) this Agreement, . . . [or] (e) the scope or validity of the arbitration obligation under this Section 10.02,[3] shall be submitted to binding arbitration under the authority of the Federal Arbitration Act and must be determined by arbitration administered by the American Arbitration Association pursuant

---

[3] Plaintiffs contend that Form 2 limits the delegation of arbitrability to the scope and validity of § 10.02, and that the applicability of § 10.03, which sets forth certain exceptions to arbitration, remains an issue for the Court. Plaintiffs' argument ignores § 10.02's separate statement entrusting to the arbitrator "[a]ny issue as to whether a matter is subject to arbitration."

ORDER - 4

to its then-current commercial arbitration rules and procedures. . . . Any issue as to whether a matter is subject to arbitration will be determined by the arbitrator. . . .

Defs.' Exs. B(1)-B(5) (docket nos. 17-2 – 17-6, each at 7).

Plaintiffs Ryan Landon Hollis, who has purchased three SEVA franchises, and On Call Enterprises, Inc., in which Michael and Susan Call are the sole shareholders, each executed a franchise agreement (Form 3) that specifies the following dispute resolution mechanism:

> Any dispute between you and us . . . arising under, out of, in connection with or in relation to (a) this Agreement, . . . [or] (e) the scope or validity of the arbitration obligation under this Section 10 shall be submitted to binding arbitration under the authority of the Federal Arbitration Act and must be determined by arbitration administered by the American Arbitration Association pursuant to its then-current commercial arbitration rules and procedures. . . . [T]he arbitrator shall decide all factual, procedural, or legal questions relating in any way to the dispute between the parties, including, without limitation, questions relating to whether Section 10 is applicable and enforceable as against the parties; the subject matter, timeliness, and scope of the dispute; any available remedies; and the existence of unconscionability and/or fraud in the inducement.

Defs.' Exs. D(1)-D(2) (docket nos. 17-11 & 17-12, each at 7-8).

By reference to the AAA rules[4] and by explicit, clear, and unmistakable language, Forms 1, 2, and 3 delegate the question of arbitrability to the arbitrator. The Court must

---

[4] Plaintiffs rely on *Meadows v. Dickey's Barbecue Restaurants Inc.*, 144 F. Supp. 3d 1069 (N.D. Cal. 2015), for the proposition that incorporation of the AAA rules does not rise to the level of "clear and unmistakable" evidence of delegation when the parties are not equally sophisticated. *Meadows*, however, is distinguishable. Unlike in this matter, in *Meadows*, the arbitration agreement did not expressly authorize the arbitrator to decide whether claims were subject to arbitration, and the district court declined to consider a reference to the AAA rules, standing alone, as sufficient evidence of an agreement to delegate arbitrability to the arbitrator. *See id.* at 1077-79. Moreover, in *Meadows*, the record reflected that the parties resisting arbitration had no prior experience running a business or owning a franchise and no legal training or experience dealing with complicated contracts, *see id.* at 1079, whereas in this case, only two of the fourteen individuals who executed agreements with SEVA have indicated that they were not represented by counsel and were inexperienced in commercial matters, Hollis Decl. at ¶¶ 10-11

ORDER - 5

enforce this provision of the parties' arbitration agreement absent an applicable defense, for example, fraud, duress, or unconscionability, none of which plaintiffs have asserted. *See Mohamed*, 848 F.3d at 1209.

Even if, however, the question of arbitrability was appropriately before the Court, the Court would stay this matter pending arbitration. Plaintiffs contend that, because they seek rescission as a remedy, their various statutory claims fall within an exception to the arbitration provisions of Forms 1 and 2. The exceptions set forth in Forms 1 and 2 are nearly identical, indicating that the parties agree the following claims will not be subject to arbitration:

> any action for declaratory or equitable relief, including, without limitation, seeking preliminary or permanent injunctive relief, specific performance, [or] other relief in the nature of equity to enjoin any harm or threat of harm to such party's tangible or intangible property, brought at any time, including, without limitation, prior to or during the pendency of any arbitration proceedings initiated hereunder.

Defs.' Exs. A (docket no. 17-1 at 4) & B(1)-B(5) (docket nos. 17-2 – 17-6, each at 8). Form 3 contains no similar language. *See* Defs. Exs. D(1)-D(2) (docket nos. 17-11 & 17-12).

Plaintiffs' theory was previously rejected in *Remy Amerique, Inc. v. Touzet Distrib., S.A.R.L.*, 816 F. Supp. 213 (S.D.N.Y. 1993). As explained in *Remy*, the effect of the exception is "to make injunctive relief in judicial courts of proper jurisdiction available to the parties *in aid of arbitration*, rather than . . . transforming arbitrable claims

---

(docket no. 24); Call Decl. at ¶¶ 10-11, 13 (docket no. 26). The record simply does not support a conclusion that the franchise agreement signatories (other than Hollis and Call) lacked the sophistication necessary to treat incorporation of the AAA rules as evidence of an agreement to arbitrate arbitrability.

ORDER - 6

into nonarbitrable ones depending on the form of relief prayed for." *Id.* at 218 (emphasis added). Thus, a party may seek a preliminary injunction pending resolution of the merits by arbitration, or a permanent injunction or declaratory relief after prevailing in arbitration. *Id.* A party may not, however, circumvent the arbitration clause by simply seeking equitable remedies for claims that are squarely within the scope of matters to be arbitrated. This interpretation brings the arbitration provision and the exception at issue into harmony with each other and the federal policy favoring arbitration. *See id.*; *see also Allison v. Medicab Int'l, Inc.*, 92 Wn.2d 199, 204, 597 P.2d 380 (1979) (holding that, pursuant to the Supremacy Clause of the United States Constitution, "the federal arbitration act requires enforcement of the arbitration clause in the franchise agreement despite the judicial remedies afforded by the Franchise Investment Protection Act").

The cases on which plaintiffs rely are distinguishable. In *Proulx v. Brookdale Living Cmtys. Inc.*, 88 F. Supp. 3d 27 (D.R.I. 2015), the plaintiff was required to arbitrate his claims for legal remedies, but was authorized to return to the district court, after the arbitration concluded, to make a motion, if appropriate, for equitable relief. In *New Orleans Gas & Elec. Lights, Inc. v. Me'lange Joli, Inc.*, 2011 WL 2680578 (M.D. La. July 8, 2011), the claims that were deemed non-arbitrable were to protect intellectual property rights, not to rescind the agreement between the parties. In *Detroit Med. Ctr. v. Provider Healthnet Servs., Inc.*, 269 F. Supp. 2d 487 (D. Del. 2003), the arbitration provision at issue was substantially different, excluding from arbitration "any equitable suit, action, or other proceeding . . . arising out of, in connection with or in any way relating to" the transaction. *Id.* at 490, 494. As observed in *Remy*, plaintiffs' inability to

cite any relevant supporting authority "is not surprising" because their interpretation of the provisions at issue would have "a distinctly negative impact upon the arbitrability of disputes, in contravention of federal public policy." See 816 F. Supp. at 218.

**Conclusion**

For the foregoing reasons, the Court previously GRANTED in part defendants' motion to stay this action pending arbitration, docket no. 17, and now GRANTS the deferred portion of such motion. This case is STAYED pending further order of the Court. The parties are DIRECTED to file a Joint Status Report within fourteen (14) days after the conclusion of arbitration proceedings or by July 31, 2018, whichever occurs earlier. The Clerk is DIRECTED to send a copy of this Order to all counsel of record and to remove this matter from the active docket.

IT IS SO ORDERED.

Dated this 13th day of September, 2017.

Thomas S. Zilly
United States District Judge